I hope I said that right or close to right. I learned 30 years ago, and I don't want to tell you how old I am, but clearly more than 30 years ago, think of customer and start it with a D. Good morning. The court notes that you and Mr. Paulo were appointed under the Criminal Justice Act. Yes, please. And we appreciate your help to your client and to the court. Thank you. Family. Conspiracy. Gilbert's Drug Trafficking Organization. That's one of the questions we have today. This term, Gilbert's Drug Trafficking Organization, was first created by government counsel in the Offense Conduct Letter. It was quickly adopted by the PSR author, and we objected to it as often as we could. But as I'm going to note later, maybe clearly not often enough. I represent Gilbert. He's wheelchair bound. He was involved with the conspiracy. He pled guilty to all six controlled buys and to his conspiracy offense. He did not plead guilty to a plea agreement. We'll talk about that for a little bit. Mr. Paul represents a family member, Chris Ellis. I asked you if I was walking up here and government counsel asked to borrow one of my legal pads. And I asked Mr. Paul, please hand him a legal pad. Does that make me a manager or a supervisor? Effectively, that's what happened at the one controlled buy. Well, there wouldn't be four and five in your hypothetical. There wouldn't be enough people. Well, the court quickly found that there was five people. You had four co-counsel. But the point is that if I merely asked Mr. Paul to hand over my legal pad to government counsel, that's similar to what happened at the school. And that's what the government claims or the court determined was evidence of managerial or supervisor because I asked somebody while I was at a school soccer game or up here, and I said, he wants the legal pad. Go ahead and hand it to him. I don't find any authority in the Eighth Circuit that says that is exactly what we're entitled to have as far as a manager or supervisor. I do note that I objected every time I could regarding the leadership type enhancement. And that's one of the critical questions here. The only thing that I now regret saying is that in the PSR 17. Let me make sure I remember correctly. We're talking the three level. Yes. Not the two or the four. Correct. And the distinction can be significant. It can be. The manager or supervisor will and five or more people. And the only other thing that there's evidence of the conspiracy. We pled guilty to the conspiracy. The others either pled guilty to the conspiracy. The only one that went to trial was an acquittal, and that was Mr. Theotis. So the point that I'm making is that we argue and we urge that there is an abusive discretion for the court to make the determination based upon the cold evidence that she had at the sentencing hearing. There was no testimony at the sentencing hearing. I specifically noted that we were aware that she was the presiding judge for the trial where. We have unobjected to facts in the PSR. Well, that's the only. The only unobjected to facts is my regret is in paragraph 17, it was Gilbert instructed Theotis. I objected to the role enhancement, but I would have wished that I said to correct that that we objected to he asked. And I think that's to the extent that you want to hang manager or supervisor on the word instruct alone. Then that's the court's decision here. I don't, I argue, I don't believe that's enough. I argue that that whole issue and that concern of that, that's the only part of the PSR, which may not have been clearly unobjected to. Was there anything else just about the structure of the conspiracy and other people's roles that one could infer that your client was sort of higher up and more. In my opinion, no. In my opinion, the testimony was, is that Mikey Brown had a role. And if you take a look at the five sentencing exhibits the government produced, two, two of those sentencing exhibits, one identified I don't know who Gilbert is. The other one says I heard of Gilbert, but I didn't have any dealings with him. The other three did have dealings. The one witness was the one who actually did the hand-to-hand purchase at the school. He was one of the persons that did some of the six controlled buys because he was being, he was already in cooperation with the government regarding his charges. But other than that, if you read the sentencing memos, or not the sentencing exhibit transcripts, it says that there were times that they contacted Gilbert for delivery and somebody else delivered. Was there, I'm sorry. Go ahead. Was there evidence, there's the time that you've referenced, was it at a ball game? Yes. Where your client told someone else to deliver the legal pad. Was there ever anything the other way around? Like was anyone ever telling your client to make the delivery? Or make that handover of the legal pad? The answer to your question is no. And I will further note for the court again that there was a soccer game where the evidence, I think, is very clear in the PSR that Gilbert was contacted at the soccer game and they controlled, the CI wanted to buy, wanted to buy. He finally said, yeah, I've got some. And then he said, well, I've got to have it right now. And he says, well, I'm at a soccer game. And then after they had contact, I believe the evidence is that Chris came in and delivered it for Gilbert. I guess what I'm trying to get at is if there was sort of reciprocal, you know, Gilbert and Christopher sort of do this back and forth, right? So neither one is the leader or the supervisor or the manager. They both sort of play that role. And I just wondered if there was any sort of equalizing testimony. There's, I don't believe. Or evidence. I want to, I'm always struggling because I want to make sure I'm as responsive to the court as possible. There's no evidence that I recall where somebody else's statements were, I was asked to get drugs and I received them from Gilbert. I don't think that's in the record in any place. But I would also note that there was nothing. What about this informant, K.H.? How does that testimony fit in? I thought there was testimony from the informant that Gilbert would have co-conspirators deliver drugs for him. And that transactions were arranged through Gilbert. I think I, I think I explained in my perception, in my interpretation what that says is yes, there were times where Gilbert was asked for drugs and somebody else delivered them. I thought I said that straight out at the beginning because, but my point is, is that I think that's in sum and substance part of the whole concept of the conspiracy. So what is the testimony of this person, K.H.? Is it as minimal as you have described here? I think that the testimony of K.H., he, I'm checking through my notes, K.H. was both trial testimony, which was exhibit number two, and his grand jury testimony, which was exhibit number three. And he says that Gilbert was working on his own at first, and then others became involved. He was buying from Gilbert, and he says as early as 2017. And then he talks about the time where he bought at the soccer field. And then he came in, I think he said, during his trial testimony, as I'm reading my notes, it was he did three controlled buys, and one was near the school and two were on 10th Street. And then there were times where he, and he says that he met others through Gilbert. That was part of his trial testimony. But he guessed that Gilbert, Pete, and Mikey worked together, not that Gilbert was a leader, but they were working together. Well, he said sometimes, he said sometimes it was arranged, arranged through Gilbert. Absolutely. And to me, I mean, are we really, I know words are important, but are we really, I'm kind of quibbling over word choices here. Isn't the sense of the testimony pretty clear? And that's where I disagree with the Court, if that's the Court's interpretation. I interpret that to be more of evidence of conspiracy than manager or supervisor. I want to be respectful for the time that I have left in my co-counsel. I do want to say before I close that I do not want to be interpreted as abandoning my other arguments in my brief. We understand. Mr. Paul. May it please the Court. Counsel. Christopher is presenting only a very narrow legal issue here. And it's a very narrow legal issue because if the Court finds that Henderson is binding precedent, Chris Ellis' appeal should be denied. I can't, you're not. I apologize, Your Honor. You can raise that maybe or at least raise the mic. Your Honor, Chris Ellis presents a very narrow issue here today. And that's a very narrow issue because if Henderson is found to be binding precedent, Christopher Ellis' appeal should be denied. The Court should find that Henderson is not binding precedent because of previous precedent, namely Maldonado and Bolin. Because those cases analyzed Iowa Code Section 124.401 and used the categorical approach and applied it to a generic Controlled Substances Act federal definition of what is a controlled substance offense, that's binding precedent that precedes it. And now the Court has to go with the prior precedent and apply that rather than Henderson. Henderson found that there was incorporated language versus the generic definition when it analyzed whether or not 124, Code Section 124, Iowa Code Section 124, qualified as a Controlled Substance Act. And I'm asking the Court to find that there's an intracircuit split between Maldonado, Bolin, and later Henderson. And because those are prior cases, I believe that the Court is constrained and has to follow those. So this is a very narrow legal issue that is essentially a stare dices issue. Maldonado said, We look to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding controlled substances offense. Bolin, the career offender analysis came after an armed career offender analysis and another analysis. And so again, we apply a categorical approach and looked to the generic definition in the Controlled Substances Act. Bolin did say that we assume without finding that this is the correct standard. However, because Bolin followed that analysis with the generic definition of Controlled Substance Act, coming from the Controlled Substances Act, that is a holding that was necessary to the finding in Bolin and therefore binding on the Court. For us to find that in your favor, that Henderson, your view is that Henderson misapplied these prior two cases? Or did not follow them? Yes, Your Honor. Do you think that because now we have Henderson, is that something our panel can do anything about? Or would you have to go en banc? I believe that the Court could follow the prior precedent without actually overturning Henderson. And so that is the hair I am splitting here. Is that if the Court finds that those are in conflict, that Maldonado and Bolin are in conflict with Henderson, then it should follow the prior precedent. So that would not be overturning Henderson, but rather following the prior precedent. And so I believe that the Court can do that in panel and not en banc. And then if the Court wanted to overturn Maldonado and Bolin, finding that they contradict Henderson, that is something that I believe the Court has to do en banc. If there are no further questions from the Court, I will... Now this is career offender, isn't it? Yes, Your Honor. Guidelines and Bolin was ACCA. And career offender. It went ACCA and there was a career offender issue as well. And it is set up. There are multiple sections. I imagine the Court is very familiar with Bolin. I haven't re-read it for a while. Yes, I am familiar with it. But there is an analytical framework section, and then there is a section about the Controlled Substances Act prior conviction enhancement, and about the armed career offender enhancement. And then there is the career offender guideline enhancement after that. If there are no further questions from the Court, I will reserve the rest of my time.   Mr. Is it Lubin or Lubin? It is Lubin, Your Honor. May it please the Court. Yes, sir. My name is Joseph Lubin. I'm arguing on behalf of the United States today. This Court should affirm both the sentence of Gilbert Ellis and Christopher Ellis. Both of Mr. Gilbert Ellis and Mr. Christopher Ellis were involved in a drug trafficking conspiracy in eastern Iowa, during which co-conspirators or they themselves would travel to Chicago, obtain drugs, bring them back to eastern Iowa and disperse them. You're talking awfully softly. I apologize, Your Honor. And then disperse those drugs throughout the surrounding area. Mr. Christopher Ellis pled guilty to a single methamphetamine trafficking account pursuant to a plea agreement. Mr. Gilbert Ellis pled guilty to six different methamphetamine and heroin trafficking accounts without the benefit of a plea agreement, including an account involving distribution of heroin near a school. First, briefly on Christopher Ellis, it is the government's position that Henderson and subsequent decisions, including the United States v. Bailey, are binding precedent and both foreclose Mr. Christopher Ellis' position regarding the career offender enhancement. The government posits that Henderson was correctly decided. It did apply a categorical approach. Let me ask you this. Did you go back and look at whether the petition for rehearing in bank in Henderson made this Maldonado argument? I did not, Your Honor. Wouldn't that have been logical to do? It would have been, yes. Again, we maintain that Henderson Would that matter? Would that matter to the, which is the binding? If there's a conflict, which is binding? If there's a conflict between Henderson and prior precedent? If counsel is correct that Maldonado and Henderson are in conflict, and he argues under our rather recent NBank rule that the prior has to govern, and that argument was made in the petition for rehearing in bank in Henderson, what would that say about the, is it Hamill that's the prior? Which I descended from. If that argument had been previously made and discarded by the court, then it would affirm that Henderson does control here.  I don't know if we've ever had that presented. I don't recall. Regardless if that had been presented, it is the government's position that Henderson and subsequent decisions, United States v. Bailey in particular, remain binding here and foreclose. Why isn't there the conflict, counsel argues? If we look at Henderson, it's the government's position that it does apply, it does follow Maldonado and Boleyn in applying a categorical approach. It looks to the definition in the guidelines section 4B.1.2, and properly determines that the Iowa Code section 124.401 fits within that definition. Iowa Code 124.401 prohibits or is felony offenses under state law prohibiting the distribution, etc., of controlled substances. There's no additional definition of what a controlled substance must be within section 4B.1.2. There's no, for instance, cross-reference to the Controlled Substances Act. And so what Mr. Ellis is... Well, why wouldn't that... Isn't the difference between the Arbitrary Criminal Act and the control offender? Wasn't Maldonado an ACCA case? That's correct, it was. And, of course, Boleyn was... the main focus was ACCA. And typically we say that we read the two together, but they're not identical. So is that the reason why there's no conflict? Or are you just saying, well, it doesn't look like... Or Henderson was right and Maldonado was wrong? That's certainly a piece of it, Your Honor, is that they are... You can't argue Henderson was right unless you went back and made the argument that our normal prior thing was wiped out by the denial of rehearing in Henderson. Otherwise, you've got to have a legal reason they don't conflict. Here, it's our position, Your Honor, that they don't conflict because Henderson applies the categorical approach, which is the focus of Mr. Ellis's argument here, is that Henderson failed to apply a categorical approach to determining whether Iowa Code Section 124.401 fits within the career offender enhancement and whether that is a controlled substance offense that fits within that enhancement language. It's our position that it does and that Henderson properly found that it categorically does. And so if there are no further questions on Mr. Ellis, I'll move on to Mr. Gilbert Ellis. Briefly, at the beginning, I'd like to address a couple points made by Mr. Ellis's... Mr. Gilbert Ellis's counsel regarding objections to the PSR. I'll note that during the sentencing hearing, Mr. Ellis's counsel was specifically asked whether he had factual objections to the PSR and he affirmatively stated that he did not, that he had no objections. That's on page 12 of the sentencing transcript. Mr. Gilbert Ellis then spoke up, said that he did have a few minor objections to the dates that certain transactions occurred, but none of those transactions were disputed. The way that the transactions occurred were not disputed. And so it's our position that the final PSR is effectively unobjected to. And there are several paragraphs in that final PSR that describe Mr. Gilbert Ellis's supervision and management of other co-conspirators. I'll refer the Court to paragraphs 14 regarding the delivery of heroin purchased from Gilbert, but then delivered through another individual. Paragraphs 16 and 17 regarding Mr. Gilbert Ellis directing a co-conspirator, renting a vehicle directing a co-conspirator to drive to Chicago where drugs were being procured by the conspiracy, and then bring back a co-conspirator with him. Another example is paragraph 26. This is involving, I believe, one of the confidential sources referenced by Judge Shepard in his questioning involving purchases from a variety of the co-conspirators, including purchases that were made from Gilbert but then delivered through other individuals. And so we see time and time again throughout the PSR and also in the government sentencing exhibits Mr. Ellis or Mr. Gilbert Ellis instructing other members of the conspiracy to deliver drugs on his behalf. This case sort of seems to challenge that line between just what is inherent in a conspiracy and the way people have to work together and maybe have different roles within that conspiracy that are not necessarily supervisory over each other, but just different roles in what they're doing and actual supervising and managing. This one seems to sort of, you know, kind of toe that line a little bit without a bigger and better understanding of the conspiracy. Without a trial, without witnesses, we have bits. And so we have, you've described sort of three different transactions, but what if there were a bunch of other transactions that suggested other types of relationships among people within the conspiracy? Would that change our assessment of what Mr. Gilbert Ellis' role was here for purposes of the guidelines? Theoretically, it could. If we had additional instances where, as Your Honor pointed out during Mr. Gilbert Ellis' counsel's argument, if we had instances where Mr. Gilbert Ellis was delivering drugs on behalf of people, and it was kind of a give-and-take situation where we didn't have a clear hierarchy that we have here where Mr. Gilbert Ellis is the one directing others to deliver drugs. People purchase drugs from him. He says, go pick up the drugs from Christopher. Go pick up the drugs from Theotis. Go pick up the drugs from Larry. We have here a clear indication that Mr. Gilbert Ellis is not a peer in that organization. He is a step above. He's the one that's directing other people to deliver drugs on his behalf. He's the one renting a vehicle and directing someone to go to Chicago and pick up a co-conspirator. Was there evidence he was getting more of the cut? Was he financially rewarded more significantly than the others? Not that I'm aware of. That certainly could be the case, but not that I'm aware of based on the record. And so it's the government's position that Mr. Gilbert Ellis is directing other individuals, directing people, and that's shown throughout the PSR. It's shown in the government sentencing exhibits. The organization did involve five or more individuals. Clearly that's shown again in the PSR and in the sentencing exhibits. The enhancement applies here similar to just a couple of the courts' prior decisions applying a three-level enhancement. For instance, in United States v. Moreno, an individual received a three-level enhancement for supervising deliveries and payments. In United States v. Reyes Ramirez, an individual received the enhancement for providing courier instructions and logistics support. Again, that's similar to Mr. Gilbert Ellis' role here. And so the enhancement does properly apply. I'd also like to briefly touch on Mr. Gilbert Ellis' procedural and substantive arguments here, starting with the attribution of methamphetamine found during a traffic stop to him. That's described more in paragraphs 16 and 17 of the PSR. My question is, what's the government's excuse for the prejudicial, untimely purity determination? My understanding is that the late disclosure was- I guess there's nothing in the record, right? There's not. It's a very limited record in regards to Mr. Gilbert Ellis and Christopher Ellis in terms of why that late disclosure took place. My understanding, it was just entirely inadvertent. However, I will know- With the Brown case having proceeded through sentencing? Using the PSR mixed purity determination? Yes, Your Honor. The government already had this information and they didn't use it in Brown, but they whacked Ellis with it? So my understanding is that the drug testing results were disclosed prior to- Not the disclosure. When was it done? The drug testing? Yeah. It had been done several months prior to that. Before Brown's- That's correct, Your Honor.  Yes. And the mixed was not challenged, or was it challenged and overruled? It was challenged and overruled, Your Honor. With the same test results that we have here? Well, I'm sorry. I take that back. It was not overruled. The court varied downward to account for the late disclosure in relation to Michael Brown. The purity results themselves were not challenged and overruled. I thought from the briefs that Brown was sentenced based on mixed. That's correct, Your Honor. What's this varied down? He was sentenced based on the guidelines as if it was a mixed purity, but it was a downward variance. The court considered it as pure, but then varied downward to sense him as if it was- So there wasn't a mixed determination. There was a purity determination. That's correct. Why isn't this explained in the briefs? Well, Your Honor- If the court varied down from pure to mixed in Brown, and then based on comparative analysis here did not do that or did less than that here, that's kind of the case that was briefed, but we don't get those facts. Well, Your Honor- We get facts as though the government let a mixed determination drive the range in Brown, and then whack Ellis. I mean, you just set this up for a 2255 that then won't go anywhere by not making it clear. In the briefing, Your Honor? Yes. And that's- My apologies on that, Your Honor. There's something in the briefing that says there's no explanation, or maybe just my reaction to the briefs. No explanation for why the government was so late. Here the fact is it wasn't late. Well, Your Honor, the disclosure itself was late. The purity test results had come back. The government failed to- I mean in Brown. Why it was so late in Brown? You said there was an objection in Brown. No. My understanding is in Mr. Brown's sentencing, the district court accepted the purity results, but then it varied downward because of the late disclosure. You just said 30 seconds ago that, yes, Brown objected to that purity determination. I believe- Well, I would have to go back and check Mr. Brown's sentencing transcript. Well, you sure made a mess of the issue for me. Your Honor, there is a footnote in our briefing that addresses the mixed purity disclosure. It's acknowledged in, I believe in Mr. Gilbert Ellis' briefing, that here it doesn't affect Mr. Gilbert Ellis to the same extent that it does with Mr. Brown because there was a large- there were several weeks in between Mr. Brown's sentencing and Mr. Gilbert Ellis' sentencing. Well, now we're talking about discretionary sentencing parameters. If the facts had been as I got- I determined from the briefs and I was the trial judge, there would not have been a purity determination. I would have faced the range on the mixed recommendation in the PSR. And so this does have- this affects the exercise of discretion by the sentencing judge. Oh, well, it was harmless. Yeah, well, it might have been harmless. It might not have been. There's no alternative. Is there an alternative sentencing determination here? No, Your Honor. I will note that there are significant distinctions, and this gets into- Sure, then we're into the normal reason that, you know, comparing co-conspirators doesn't usually get defense counsel very far because there's always differences and there's so much discretion. But here we get set up a false fact table. Go on. I've said my piece, but it may come back to haunt you. Just briefly on- then on just to address the substantive reasonableness argument in relation to Mr. Gilbert Ellis. First, he makes an argument about meth versus pure. He makes a policy argument regarding how the guidelines treat meth versus- actual meth versus mixed methamphetamine. The district court considered that, rejected it. As this court has previously held, the district court is not obliged to vary downward to account for policy disagreements a defendant might have with the guidelines. And then similarly, there are legitimate differences between Mr. Christopher Ellis and Mr. Brown- or Mr. Gilbert Ellis and Mr. Brown. Again, with the role that both of these individuals played within the conspiracy, the number of charges they both pled to, and the fact that Mr. Gilbert Ellis pled guilty to distributing a controlled substance near a school. And so for these reasons, the United States asks that Mr. Gilbert Ellis' and Mr. Christopher Ellis' sentence both be affirmed. Thank you, Your Honors. Well, defense counsel, I have five minutes left. You can share it, but you can't each get five minutes. We have a long morning. We're hoping to be efficient. I guess what I want to do is I just want to address a few of the points that were raised. We think that there is a clear differentiation between morphine and meth. regarding what was done and whether or not the court had sufficient evidence to support a managerial supervisory role. We dispute the representation that there is a clear indication that Gilbert was not a peer but a step above. We don't see that. This pre-sentence investigation report that is here is showing the things that Gilbert did. It doesn't show those times where Gilbert was asked to deliver and they had it controlled by. Gilbert pled guilty here to all six controlled substances because the deliveries, because he did them, including the one in the school. That's not being hid. He was there for a soccer game, and that's why it happened in the school zone. And there's no other evidence or indication of that. I like the fact that, yes, I think this one does toe the line. We are here trying to be critical as far as is this paper, is this documentation, because we don't have any testimony where we have to make findings as credible or critical analysis. Is that enough to support the managerial role? We dispute that it does. We did not make any factual objections to the PSR. I noted the one point where instructed versus requested. But the differences in the details, to me, it's not a factual question of leadership. It's a legal question of leadership. The managerial or supervisory, we don't think it's there. Well, then what leaps to a court of appeals mind is what's the standard review? Well, I set forth a standard review in the briefing. I don't want to miss. Did you say abuse of discretion or de novo? There are parts that are de novo and there are parts of abuse of discretion. Interpreting the guidelines would be de novo, but I don't think we have that here. We have applying them. That's, to me, and that's part of my argument as far as abuse of discretion. The abuse of discretion in my mind, okay, the abuse of discretion in my mind is, is there something that this court had an opportunity to evaluate and appreciate and consider that this court in front of me does not have an equal opportunity to evaluate, consider, and make a determination. You have the same paperwork this judge has. So my argument is that the abuse of discretion is more heightened because you see the same paperwork the trial court did. Because you're not, at least right now, contesting what's in the pre-sentence report, but you're just saying even given all of that, it's not managerial or supervisory. Accepting, as I said, the one point where they used the word instruct, and I wish I would have objected to the word instruct in paragraph 17. But I see I've got a minute and a half left for my counsel. Thank you. Thank you. May I please ask the court, does the court have any questions that come up after, regarding the Henderson issue, the Henderson v. Maldonado issue at this point? I would just reiterate the structure of Boleyn. Why doesn't the ACCA v. Kruger-Fender matter with respect to whether there's a conflict? It does matter, Your Honor. It has to, otherwise you don't get any help out of Boleyn and Maldonado. Your Honor. Just because we normally treat them for many issues the same, doesn't mean they're the same when the issue is statutory. That is correct, Your Honor. The ACCA v. the guidelines are not textually identical. And Maldonado and Boleyn both interpreted the guidelines, and they went through and talked about whether or not the Iowa 124.401 statute qualified. Maldonado was looking at offers to sell for that purpose, and Boleyn was looking at aiding and abetting, whether they qualified. Boleyn, there's an application note one in the guidelines. Boleyn, why do we even need to worry about this Henderson? Why do we need to worry about Henderson? Why is it reversible even if Henderson is not controlling? Your Honor. I thought you said at the outset if Henderson is controlling, we lose. Okay, now why don't you lose even if Henderson is not controlling? I don't lose if Henderson is not controlling because if Maldonado is controlling, then the court should have looked at the generic definition in the Controlled Substances Act to determine whether or not it qualified. I'll bet Boleyn didn't. Boleyn did. However, Boleyn was different because it was looking at the application note one under career offender. All right. Time's up.  We've heard these issues so many times.